CHAS. CHIPMAN'S SALES CO., INC., Plaintiff, *v.* ELY & WALKER DRY GOODS COMPANY, Defendant.

Supreme Court, Trial Term, New York County, May 9, 1944.

*Richard Swan Buell* for plaintiff.

*Stephen P. Duggan* and *Richard E. Hawkins* for defendant.

Peck, J. Plaintiff is a factoring corporation and defendant is engaged in the dry goods business. Both maintain offices in New York City. In 1941 Chas. Chipman's Sons Co., Inc., as selling agent for Rosedale Knitting Company, a Pennsylvania corporation, sold a quantity of hosiery to defendant. Only a portion of the order was delivered and a dispute arose as to the obligation of Rosedale to deliver the balance. In 1942 defendant purchased another quantity of hosiery from Chas. Chipman's Sons Co., Inc., as selling agent for Rosedale, with the intention not to make payment of the purchase price in cash but to set off a claim for the nondelivery of the 1941 order. The plaintiff has taken an assignment from Rosedale of the 1942 contract and brings this action for the purchase price on that sale. The defendant admits the plaintiff's claim but counterclaims for breach of the 1941 contract by plaintiff's assignor, Rosedale.

Plaintiff's contest of the counterclaim is twofold: (1) that the counterclaim did not belong to the defendant in *good faith* before notice of the assignment to the plaintiff, as required by section 267 of the Civil Practice Act, and (2) that the counterclaim is not well founded in fact.

The objection to the counterclaim under section 267 of the Civil Practice Act rests upon the stipulated fact that the defendant placed the 1942 order solely as a means of compensation **for**

the alleged 1941 breach of contract by Rosedale, with the intent of not paying cash for the goods delivered. The plaintiff thus contends that there was fraud in the placing of the 1942 order and that the counterclaim does not belong to the defendant in good faith.

Plaintiff's argument rests upon the assumption that there is some special ingredient of good faith required in a counterclaim. There is no such requirement. The definition of a counterclaim is " any cause of action " in favor of a defendant against certain persons (Civ. Prac. Act, § 266). There is no distinction in the make-up or quality of a cause of action because it is a counterclaim. Section 267 of the Civil Practice Act imposes the qualification upon the assertion of a counterclaim, where the plaintiff's cause of action is founded upon a contract which has been assigned to the plaintiff and the counterclaim is against the assignor, that the counterclaim must belong to the defendant in good faith " before notice of the assignment ". While there have been no cases construing this provision of section 267, it is quite apparent that the " good faith " requirement does not relate to the merits of the counterclaim, but rather to defendant's acquisition of the counterclaim in reference to the time defendant received notice of the assignment of the contract upon which the plaintiff sues. The object of the provision is to prevent the acquisition or assertion of a counterclaim for the purpose of defeating the assignment.

There is no claim by the plaintiff here that the defendant acquired the counterclaim for the purpose of defeating the assignment or any rights of the plaintiff, and obviously the defendant acquired the counterclaim before receiving notice of the assignment under which plaintiff sues. Defendant's procedure was aimed against Rosedale, plaintiff's assignor, undoubtedly with the purpose of forcing any litigation into New York State and avoiding the necessity of going to Pennsylvania, the home of Rosedale, for an adjudication of rights. The counterclaim having been acquired by defendant before notice of the assignment and there being no element of bad faith in respect to the plaintiff, the counterclaim is not invalid under section 267 of the Civil Practice Act.

The merits of the counterclaim depend upon the interpretation and application of a clause in the 1941 contract that " The price of goods covered by this order is based on today's operating costs. If these costs should be increased because of any condition beyond our control, the price is subject to advance. The customer will have the right to approve such advance or

to cancel this order within five days after receipt of notice."

The order was placed in April, 1941, for the delivery of silk and nylon hosiery in July and August. The July deliveries were made. On July 26, 1941, silk stocks were frozen. The silk freeze caused consternation in the trade and a shortage of silk hosiery. The price of both silks and nylons soared in the market. The defendant, feeling concern about the delivery of its order, conferred with Chas. Chipman's Sons Co., Inc., in the middle of August and was told that Rosedale would have to receive an increase of $2.50 a dozen on the silks and $1.75 on the nylons.

There is a dispute in the evidence as to just what was said at this meeting. The defendant's witnesses testified that nothing was said by the representative of Chas. Chipman's Sons Co., Inc., about increased operating costs, and the defendant took the position that an increase in price was unjustified and insisted upon delivery at the contract prices. The representative of Chas. Chipman's Sons Co., Inc., testified that he made it clear that increased costs resulting from decreased production necessitated the price advance, and that the defendant then availed itself of the privilege of canceling the order.

The court finds that the representative of Chas. Chipman's Sons Co., Inc., sufficiently indicated to the defendant that the price advance was attributable to increased costs of production. The court also finds that the defendant did not cancel the order but insisted upon performance of the contract at the contract prices. The question thus remaining is whether Rosedale was justified under the contract in demanding the increased price.

In justice to Rosedale it should be stated that the silk freeze occasioned a shutdown of operations for two weeks, and when operations were resumed Rosedale did not know how long its silk supply would last or how operations should be scheduled. It figured that there would be a drastic decrease in production with a corresponding increase in unit cost and estimated that its overhead costs would amount to between $2.40 and $2.79 a dozen as against an overhead cost of $1.12 a dozen at the time the contract was made.

The price increase of $2.50 a dozen on the silk hosiery was substantially in excess of the estimated increase in costs and was admittedly determined without any nice regard to increased costs. If, however, the estimate of increased costs had actually been experienced at the time the hosiery was due to be shipped (August), the court would be inclined to overlook the discrepancy between the increased costs and the increased price. But the fact is that the increase in costs actually experienced in the

period between August 15th and September 11th was only $.20 a dozen. After that there were further increases in costs.

The court must hold that the words of the contract, " If these costs should be increased ", mean an increase actually experienced at the time the hosiery would be manufactured, and not one contemplated or experienced at a later date. The slight increase experienced in August did not justify a price increase twelve times the amount of the increased costs.

The plaintiff's position that Rosedale had an absolute right to increase the price and that defendant had only the alternative of accepting the increase or canceling the order cannot be accepted. An increased price could only be made upon the basis of increased costs and had to bear some reasonable relationship to increased costs. On the facts here Rosedale was not justified in making the demand which it did, and its refusal to fill the balance of the order except upon payment of the increase demanded was a breach of contract, entitling defendant to damages in the amount of the difference between the contract price and the market price for the hosiery. The stipulated market price makes the consequent damages $5,505.

Judgment for the plaintiff for the amount of its claim less the amount of defendant's counterclaim. Settle judgment. Twenty days' stay of execution; thirty days to make a case.